FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 10 2022 ★
BROOKLYN OFFICE

pg. 1

January 04, 2022

Delivery via First-Class Mail (USPS)

The Honorable Margo K. Brodie
The Honorable Raymond J. Dearie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Case No's
19-CR-108(MKB); 19-CR-139(RJD)

Letter-Motion for Temporary Release Pursuant to 18 USC 3142(i)

Dear Chief Judge Brodie and Judge Dearie:

    Please construe this letter as a formal motion. The defendant, Andre Wilburn, without waiving any other motions, and to be considered in addition and in connection with any previously submitted motions, respectfully moves the Court to grant him temporary relief from the prejudicial and dangerous COVID-19 conditions at Brooklyn Metropolitan Detention Center ("MDC Brooklyn"), by temporarily releasing him subject to the least restrictive conditions pursuant to † 18 USC 3142(i) of the Bail Reform Act of 1984 (18 USC 3142). The purpose of the requested relief is for adequate preparation of defense and to eliminate the fear and anxiety of being housed in a COVID-19 isolation unit for the second time. The defendant would also like to clarify that this is not a letter-motion for "sentence reduction." Nor was Docket #58 (19-CR-108(MKB)) or Docket #119 (19-CR-139(RJD)) since Judge Dearie has not accepted the defendant's guilty plea, therefore the defendant has not been sentenced, despite pleading guilty before Magistrate Judge Bloom on October 24, 2019. The record should reflect that aforementioned docket entries were improperly titled.

    As a basis for release, the defendant sets forth the following:

Title 18 USC 3142(i) stipulates that "the judicial officer may... permit the temporary release of the [defendant]... for preparation of the person's defense or for another compelling reason." The defendant seeks relief for both of the reasons supported by the statute.

I. Preparation of Defense

A. Access to Counsel

The defendant's meaningful access to counsel, or in this case a lack of meaningful access to counsel, is a "compelling" and "exceptional" reason for release from custody. The Sixth Amendment right to "assistance of counsel for his [defense]" is prudent to our criminal justice system. U.S. Const. Amend. VI. MDC Brooklyn routinely violates the Sixth Amendment right by deliberately and "unreasonabl[y] interfer[ing] with the accused person's ability to consult counsel." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir 2001). In Benjamin, the Second Circuit held that New York City correctional facilities violated the right to counsel when defense attorney's "routinely face[d] unpredictable, substantial delays in meeting with clients" and were "forced to wait between 45 minutes and 2 hours or even substantially longer, after arriving at a facility to see a client." Benjamin, 264 F.3d at 179. MDC Brooklyn has been routinely violating the right to counsel in this manner since the defendant's arrival at the facility in February 2019, well before the COVID-19 pandemic. These blatant constitutional violations do not serve and further "a legitimate penological interest," Overton v. Bazzetta, 539 US 126, 131-32 (2003), in fact, they intentionally prejudice and hinder the defendant's ability to raise an adequate defense at trial. Further compounding this problem is the fact that guards routinely and abruptly end visits after one-hour. The defendant has been detained for almost 3 years, but has less than 40 hours

of attorney visitation time. To make matters worse, on some occasions, the defendant met attorney and/or paralegal in crowded visiting area with dozens of inmates and community members nearby, failing to "provide [a room with] adequate privacy." Benjamin, 264 F.3d at 187-188. These shortcomings have prevented the defendant from marshalling a successful defense with (former) counsel. Peterson v. Shanks, 149 F.3d 1140, 1145 (10th Cir 1998)(To present a viable claim for denial of access, "the inmate must allege and prove prejudice arising from institutions actions.")

B. Inability to Inspect Discovery

The defendant's case has been severely prejudiced due to (former and current) counsel refusing to allow the defendant to inspect or copy aggravating discovery. The defendant has maintained his innocence, but in almost three years, has not been able to copy or inspect any evidence of these alleged offenses. Rule 16(a)(1)(A), (a)(1)(B), (a)(1)(E)-(G), Federal Rules of Criminal Procedure. The government acted in bad faith by intentionally keeping the defendant detained knowing that counsel failed to present aggravating discovery to the defendant. Counsel claims discovery in case 19-CR-108 (MKB) is only available at "Homeland Security" headquarters in downtown Manhattan. The government knew of this situation, yet consented to detention, giving herself a tactical advantage and severely prejudicing the defendant. Under the precepts of Brady v. Maryland, 373 US 83 (1963), a prosecutor may not refuse your request for evidence that is "exculpatory" and "material" to either guilt or punishment. see Kyles v. Whitley, 514 US 419, 433 (1995)(Evidence is "material" where there is a reasonable probability that its disclosure would have produced a different result at trial.)

It's worth noting that the Second Circuit has construed "exceptional reasons" to mean, "a unique combination of circumstances giving rise to situations that are out of the ordinary." United States v. Lea, 360 F.3d 401, 403 (2d Cir 2004)(quoting United States v. Disomma, 951

F.2d 494, 497 (2d Cir 1991). Clearly being unable to inspect or even see discovery and not receiving a copy of the accusatory instrument [indictment] at all is "a unique combination of circumstances giving rise to situations that are out of the ordinary." id. Brady also applies to evidence that supports defendants claim of innocence and evidence that weakens the government's case.

C. Discarded Legal Material

On several occasions throughout the defendants lengthy pretrial detention, MDC Brooklyn staff ("the tortfeasor") intentionally discarded clearly marked law books, legal research, drafts of legal briefs, and notebooks containing law notes and case citations (hereinafter "legal material"). Below are the documented circumstances which have proven to be most detrimental to the defense:

1. On June 26, 2020, during an institution-wide shakedown, the tortfeasor intentionally discarded legal material.
2. On May 20, 2021 during an institution-wide shakedown, the tortfeasor intentionally discarded legal material. It's worth noting that the defendant began utilizing the Administrative Grievance process at MDC Brooklyn on or about February 2021. Therefore, the tortfeasor was aware of the defendant's research and that destroying this would stop the administrative complaints.
3. On December 22, 2021, the defendant was subjected to an unreasonable search of his living quarters ("cell"). The defendant's cell was targeted by retaliatory tortfeasor, in an effort to further intimidate the defendant and to discard only his property.

These three cell searches were intentional and the defendant's defense was irreparably harmed because of them.

The retaliatory tactics of the tortfeasor has made all administrative remedies unavailable, violating the defendants constitutional rights. The law is clearly established that a prison official may not retaliate against or harass a prisoner for exercising his constitutional rights. Had prison officials not retaliated against and harassed the defendant for filing grievances, he would have been able to properly document all of the constitutional violations at MDC Brooklyn, including the most recent discarding of legal materials on December 22, 2021. The staff has also silenced the defendant by threatening to reveal his charges.

## II. COVID-19

### A. Positive Test and Current Circumstances

On April 17, 2020 former counsel moved the Court to release the defendant from custody due to the clearly impending danger of COVID-19 and defense deficiencies, namely, the inability to adequately prepare for trial or assist in drafting the Google suppression motion. Docket # 17 (19-CR-108(MKB)); Docket #66 (19-CR-139(RJD)). The inadequate defense was essentially shrugged off and disregarded by the government because "the defendant ha[d] not shown any significant, long-term infringement on his ability to consult with his attorney." see Docket #18(MKB); Docket #67(RJD). Since then, the defendant has in fact demonstrated an unjustified hindrance of his ability to consult with counsel due to significant, intentional facility delays when attorney visits MDC Brooklyn, Benjamin, 264 F.3d at 185, failure to provide adequate visitation rooms, Benjamin, 264 F.3d at 188, the facility tampering with incoming and outgoing special mail, Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006), tortfeasor intentionally discarding legal materials to purposely inflict emotional distress, and several other facility-based prejudices in his September 2021 letter-motion for bail. See Docket # 48(MKB); Docket #110(RJD). To date, none of these prejudices, which plagued the defendant for years have been sufficiently addressed by the Court.

Subsequently, on April 23, the defendant was denied bail during a teleconferenced hearing before Magistrate Judge Mann. It should be noted, that the defendant was not present at this hearing. The defendant therefore requested the transcript of this proceeding on multiple occasions from both former and current counsel to better understand how the court made these findings. Docket #19(MKB); Docket #69(RJD).

In November 2020, the unit that the defendant was housed was put into isolation for COVID-19.

On November 30, 2020, the defendant was tested for COVID-19 and was found to be negative a few days later, his roommate, positive. Over the next week the defendant's name and housing situation appeared in several newspapers due to former counsel breaking attorney-client privilege and reporting private conversations to the media. During this same period, the defendant contracted COVID-19 and was isolated from everyone in the unit, his friends, his family, and his lawyer. The defendant was also only prescribed "Tylenol" for his body pains and was given puzzles and mazes to cope with the stress and anxiety. This was a very terrifying holiday season due to the lack of communication with loved ones and the lack of subsistence provided by the facility. Food was minimal and commissary was dropped to $50 (Fifty) dollars biweekly.

The COVID-19 lockdown and restrictions lasted well into 2021. Therefore, in September 2021, the defendant filed a pro se letter-motion for bail.

On November 10, 2021, at a teleconferenced status conference before Chief Judge Brodie, the defendant's Motion was denied primarily because of "the weight of the evidence," which

the defendant has not been able to inspect or copy due to his detention. It's worth noting that the defendant has maintained his innocence throughout these lengthy proceedings.

On December 27, 2021, the defendant's housing unit was locked down for COVID-19 quarantine. The following day, the entire unit was rapid-tested and despite having symptoms of COVID-19, the defendant tested negative, but his roommate, positive. This is reminiscent of December 2020 when almost identical events transpired. The stress and anxiety of experiencing another housing unit infected with COVID-19, only 30 minutes out of the cell every 3 days for showers, emails, and phone use, combined with the lack of subsistence provided by the facility, 18 USC 4042(a)(2), during this time has unjustifiably chilled the defendant's ability to adequately defend himself to the extent that he desires. Even now, the defendant is unable to cite appropriate caselaw or statutes because of a lack of research material available in his cell due to the discarding of legal material by staff, and inability to conduct any research on the computer due to COVID-19 quarantine.

B. COVID-19 Unit Lockdown Deficiencies/Punishment

As a pretrial detainee, the defendant must be presumed innocent because he has not been convicted of a crime. 18 USC 3142(j). U.S. Const. Amend. V. Without a conviction, the defendant cannot be punished. To decide if a particular condition is equal to punishment, the court considers these two questions:
  (i) is the goal of the facility's action legitimate and non-punitive?
  (ii) are the conditions an excessive way to achieve that goal? Bell v. Wolfish, 441 US 520, 538 (1979).

Since December 27, 2021, the day the unit was abruptly locked down for COVID-19 quarantine, the defendant has been subjected

to conditions that amount to inadequate subsistence and punishment. Below are the most salient facts:

1. Nutrition

The defendant has been famished since the onset of the COVID-19 lockdown due to inadequate meals and the facility refusing to sell food items on the commissary until further notice. The last commissary shop was on December 14, 2021 and the defendant was shopped multiple random food items that were not requested. Since the lockdown, breakfast, served at approximately 9:00AM, has remained unchanged. The contents are one ounce of bran flakes, two 8 ounce fat free milks, a pastry, and when they're not spoiled, an apple or a banana. Lunch, served at approximately 12:00 noon, is currently the only hot meal of the day, and portion sizes have decreased by at least half since the lockdown. Dinner, served at approximately 7:00pm currently consists of a brown paper bag containing 4 slices of bread, 2 slices of bologna, a one ounce bag of potato chips, salad dressing, and a packet of unlabelled "clear grape" juice mix. By the time dinner arrives, the defendant is extremely hungry and suffering from a headache. To make matters worse, this meal is totally lacking adequate nutrition as there is no fruit or vegetable with this "meal" and the ingredients and nutrition facts of the bologna are unknown. Dinner is also served more than 14 hours before breakfast each day. All of this combined with the "positive" tested inmates being served prior to the "negative" inmates and being served off off a dirty cart used for transporting garbage and inmate mattresses, plus the fact that birds fly freely around the unit with open plates on a cart has the same effect as punishment. And finally, commissary was reduced to $0 (zero dollars) for food items, with no warning. see exhibit A bulletin. There is no problem with the kitchen or

an issue with food supply but the facility has severely restricted food portions and commissary food items, thereby inflicting punishment. Bell, id.

### 2. Communication with the Outside World

Visits with family have been substantially restricted after being reinstated in or about April 2021 to a single one-hour visit, every 3 weeks. Oftentimes, the defendant was unable to get his visit scheduled at a time that was appropriate for his mother, who travels alone from Pennsylvania to visit. It's worth noting that "scheduling" is not the procedure on the MDC Brooklyn website and this fact was totally hidden from the non-visiting public. Additionally, as of December 27, 2021, all visits have been suspended until further notice, including attorney visits. Pretrial detention has had a substantial prejudicial and deleterious effect on the defendant's ability to defend himself to the extent that he desires due to the inability to inspect or copy the majority of discovery (including photos, complaints, superceding indictment, search warrants, arrest warrants, and affidavits) in either case to this day. These circumstances have all severely hindered the defendants visits inflicting unreasonable anxiety and stress. Brady v. Maryland, 373 US 83, 87 (1963); Bell, id.; Martinez v. Coombe, 95-CV-1147, 1996 US Dist. Lexis 15330, at *9 (NDNY Aug 22, 1996).

### 3. Medical Treatment

Following the defendant's initial COVID-19 rapid test on December 27, 2021, there has not only been a failure to retest the defendant who tested negative, but also a failure of medical staff to do rounds to check-up on inmates. A temperature check on January 03, 2022 has been the extent of medical treatment. Since the dozens of infections were confirmed, and the 24 hour lockdown commenced, psychology has not been to the unit at all, further exacerbating

the defendant's stress and anxiety. Estelle v. Gamble, 429 US 97, 103 (1976). The lack of adequate medical care has the same effect as punishment.

It's worth noting that since his arrest, the defendant has not been given the opportunity to demonstrate his good conduct beyond never having any disciplinary issues while detained. All of this combined as actual prejudice to the defendant's defense is punishment that exists solely because of his detention at MDC Brooklyn. Therefore, these are compelling and exceptional reasons permitting release in order to maintain the fundamental fairness of the criminal justice system. See US Const. Amend V; T18 USC 3142(i). Black pens are not available on the commissary, so the defendant was forced to beg for a pen from staff through a locked door in order to finish this letter-motion.

Based on the facts in this letter-motion, the defendant respectfully requests the Court to grant the relief based on 18 USC 3142(i), permitting temporary release.

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on 01/04/22.

Respectfully submitted,

*Andre*

Andre Wilburn #73608-298
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

# Exhibit "A"

December 29, 2021 Commissary Bulletin

Starting today, 12/29/2021, Commissary will only sale OTC's and Health and Hygiene items on your shop day.

For the units that have turned in commissary sheets, OTC medications as well as Health and Hygiene products will be the only commissary items filled.

This change is TEMPORARY. Commissary will inform you of any changes to this status soon.

WILBURN, ANDRE 73608298

Andre Wilburn #79036-018
MDC Brooklyn
PO Box 329002
Brooklyn, NY 11232

The Honorable
The Honorable R
United States
Eastern Dist
225 Cadm
Brooklyn, NY

SWSN



Margo K. Brodie
ymond J. Dearie
District Court
ct of New York
on Plaza East
11201

SPECIAL MAIL

540.18

