UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

UNITED STATES OF AMERICA,

             - against -

ANDRE WILBURN,

                       Defendant.

----------------------------------------------------------------

**MEMORANDUM & ORDER**

19-CR-108 (RJD)
19-CR-139 (RJD)

RAYMOND J. DEARIE, United States District Judge:

On August 15, 2022, Defendant Andre Wilburn pled guilty to one count of Mann Act coercion and enticement in violation of 18 U.S.C. § 2422(b) and one count of access device fraud in violation of 18 U.S.C. §§ 1029(a)(5), 1029(c)(1)(A)(ii).  (Min. Entry dated Aug. 15, 2022.)  In a letter dated October 5, 2022, Defendant moved to withdraw his guilty pleas, and requested a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  (Def.'s Mot. to Withdraw, Docket Entry No. 172.)  In a handwritten letter dated October 21, 2022, Defendant moved to dismiss the Superseding Information filed on August 15, 2022 which contains the Mann Act charge to which he had pled guilty.  (Def.'s Mot. to Dismiss, Docket Entry No. 178.)  In subsequent letter motions and filings, Defendant supplemented the motion and moved to dismiss all charges.  (Def.'s Am. Mot. to Dismiss, Docket Entry No. 186; Def.'s Second Am. Mot. to Dismiss, Docket Entry No. 192; Def.'s Third Am. Mot. to Dismiss, Docket Entry No. 194; Def.'s Fourth Am. Mot. to Dismiss, Docket Entry No. 202; Def.'s Fifth Am. Mot. to Dismiss, Docket Entry No. 209.)  The Government opposes.  (Gov't Opp'n, Docket Entry No. 206.)

For the reasons discussed below, the Court denies Defendant's motions to withdraw his guilty plea and also denies Defendant's motions to dismiss.

## I.    Background

### a.    Procedural Background

Defendant was indicted on February 28, 2019 on charges of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 2251(e), and possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  (Indictment ¶¶ 1–2, Docket Entry No. 8.)  On April 22, 2019, the grand jury returned a superseding indictment charging Defendant with three additional counts of possession of child pornography.  (Superseding Indictment ¶¶ 3–5, Docket Entry No. 13.)  In addition, on March 5, 2019, a different grand jury returned an indictment charging Defendant with one count of conspiracy to commit access device fraud in violation of 18 U.S.C. §§ 1029(b)(2) and 1029(c)(1)(A); two counts of access device fraud in violation of 18 U.S.C. §§ 1029(a)(5), 1029(c)(1)(A)(ii), 1029(a)(3), 1029(c)(1)(A)(i); conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; wire fraud in violation of 18 U.S.C. § 1343; and aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), 1028A(c)(4), 1028A(c)(5).  (Indictment ¶¶ 10–22, Docket Entry No. 31, Case No. 19-CR-139.)

In his initial appearances, Defendant was represented by James Darrow of the Federal Defenders.  (*See, e.g.*, Min. Entry dated June 13, 2019.)  On March 15, 2021, Defendant filed a letter expressing concerns that he had not seen discovery and about the pace at which his case was progressing and moved to appoint additional counsel to assist Mr. Darrow.  (Def.'s Mot. to Appoint Counsel, Docket Entry No. 34.)  On May 12, 2021, the Court relieved Mr. Darrow as

defense counsel[1] and appointed Carlos M. Santiago to represent Defendant. (Min. Entry dated May 12, 2021.) Only four months later, on September 30, 2021, Mr. Santiago was relieved by the Court due to a reported breakdown in communication, and the Court appointed Samuel Gregory to represent Defendant. (Min. Entry dated Sept. 30, 2021, Case No. 19-CR-139; Order dated Oct. 6, 2021.) On February 3, 2022, Mr. Gregory moved for, and the Court granted, the CJA appointment of Zachary Taylor as co-counsel. (Letter dated Feb. 3, 2022, Docket Entry No. 72; Order dated Feb. 3, 2022.)

While represented by counsel, Defendant filed numerous pro se motions, including a motion to dismiss pursuant to the Due Process Clause of the Fifth Amendment and the Speedy Trial Act of 1974, 18 U.S.C. § 3161. (Mot. to Dismiss, Docket Entry No. 61; Supp. Mot. to Dismiss, Docket Entry No. 65; Am. Mot. to Dismiss, Docket Entry No. 81.) In a letter dated April 27, 2022, Mr. Gregory formally adopted Defendant's speedy trial requests and requested that the Court rule on the motions. (Letter dated Apr. 27, 2022, Docket Entry No. 102.) On May 1, 2022, Defendant, through counsel, moved to suppress evidence seized from Plaintiff's Google Drive. (Def.'s Mot. to Suppress, Docket Entry No. 107; Def.'s Mem. in Supp. of Mot. to Suppress, Docket Entry No. 108.) By Memorandum and Order dated August 3, 2022, the Court denied Defendant's motions asserting his speedy trial rights and his motion to suppress evidence. (Mem. & Order dated Aug. 3, 2022, Docket Entry No. 151.)

---

[1] At this time, Defendant had already entered a guilty plea before Magistrate Judge Lois Bloom in Case No. 19-CR-139. (Minute Entry dated Oct. 24, 2019). After Mr. Darrow was relieved, Defendant filed a motion to withdraw that guilty plea — similar to the one currently before the Court — alleging ineffective assistance of counsel. (Mot. to Withdraw Initial Plea, Docket Entry No. 104.) The Court granted Defendant's motion because it had not yet been formally accepted by the District Court. (*See* Order dated Mar. 9, 2022).

On August 4, 2022, the Government informed the Court that Defendant had accepted a plea offer.  (Gov't Letter Requesting Case Reassignment, Docket Entry No. 153).  The following day, a change of plea hearing was scheduled before the Court for August 15, 2022.  (Scheduling Order dated Aug. 5, 2022.)

   **b.   Change of Plea Hearing**

Defendant was represented by Samuel Gregory and Zachary Taylor during the change of plea hearing.  (Tr. of Criminal Cause for Pleading ("Tr.") 2:21–22, Docket Entry No. 217.) Gregory informed the Court that Defendant intended to waive indictment, and plead to a superseding information and one count of access device fraud.  (Tr. 3:1–6.)  When the Court sought to confirm Defendant's intentions, Defendant informed that Court that he "didn't get a chance to look at the superseding information until two days ago." (Tr. 3:10–18.)  Defendant then requested additional time to review the superseding information with Mr. Gregory and Taylor.  (Tr. 3:22–24.)  The Court granted the request, and the hearing resumed after a pause for Defendant to review the superseding information.  (Tr. 3:25–4:3.)  The Court then sought "to clarify that" Defendant was "seeking to proceed . . . in the manner . . . described a few minutes ago."  (Tr. 4:6–7.)  Defendant responded "Yes, Your Honor."  (Tr. 4:9.)

The Court then requested Defendant's "undivided attention because of the seriousness of the charges."  (Tr. 4:18–19.)  The Court noted that it would "explain[] the rights that [Defendant] will be giving up by waiving indictment and pleading guilty" and urged Defendant to say if he did "not understand any of [the Court's] questions" or if he "need[ed] to consult with [his] attorneys for any reason."  (Tr. 4:21–5:3.)  Defendant was then sworn in by the courtroom deputy.  (Tr. 5:8–11.)  Next, in a series of responses to the Court's questions, Defendant acknowledged that he had been able to communicate with his attorneys, (Tr. 6:8–10), was not

under the influence of drugs, pills, or alcoholic beverages, (Tr. 7:10–15), had a clear mind, (Tr. 8:1 –2), and "understood what is happening today," (Tr. 8:3–5). The Court then "read into the record the revised superseding information." (Tr. 9:6–7.)

> [THE COURT:] In or about and between June 2016 and November 2016, both dates being approximate and inclusive within the Southern District of New York, the defendant, Andre Wilburn, did knowingly and intentionally persuade, induce, entice, and coerce an individual who had not yet attained the age of 18 years, to wit, Jane Doe, an individual whose identity is known to the United States Attorney, to engage in sexual activity for which a person could be charged with a criminal offense to wit, criminal sexual act in the First Degree in violation of New York Penal Law Section 130.50, subsection 4, using one or more facilities and a means of interstate commerce.

(Tr. 9:7–18.) When asked by the Court if he "review[ed] this document with [his] attorney," Defendant stated that he "just reviewed it now." (Tr. 9:19–20.) The Court also asked Defendant if he reviewed the document "over the weekend," to which Defendant responded "[i]t wasn't this document." (Tr. 9:21–23.) The Government then clarified that "after communicating with the defendant's counsel, they asked, and we agreed to, revise the subsection of 130.50 to which the defendant would be charged." (Tr. 10:3–5.)

After noting the differences between the new version of the superseding information and the prior version, the Court asked Defendant if he "want[ed] to move forward with waiving indictment and pleading to this information, or do you need additional time to consider whether you want to do so?" (Tr. 10:16–23.) After a pause, the Court told Defendant that he had "the right to proceed to trial and could not "be forced to plead guilty" because "[t]hat is [his] decision." (Tr. 10:24–11:4.) In the following exchange, Defendant affirmed that he wished to proceed with the change of plea hearing.

> [THE COURT:] So you can tell me now if you want to move forward with this process. There are a number of things I have to advise you of as we go along. Right now, I just want to make sure

> that you understand the superseding information that you are
> seeking to plead guilty to and whether or not you want to move
> forward with that.
>
> You have to answer verbally because the court reporter has to take
> everything down.
>
> THE DEFENDANT:  Understood, Your Honor.
>
> (Tr. 11:5–13.)

Next, the Court described Defendant's access device fraud charge, including the underlying alleged criminal conduct, and asked Defendant if he "underst[ood] that charge."  (Tr. 11:14–12:4.) Defendant responded "Yes."  (Tr. 12:5.)  The Court then asked Defendant if he "fully discussed the charges you seek to plead guilty to, as well as your case in general with your attorneys."  (Tr. 12:6–8.)  Again, Defendant responded "Yes."  (Tr. 12:9.)  Following Defendant's response, the Court explained to Defendant the elements of the offenses which the Government would have to prove if Defendant were to proceed to trial.  (Tr. 12:10–13:4.) Defendant indicated that he understood the Government's burden on both charges.  (Tr. 12:18– 19; Tr. 13:4–5.)  However, Defendant then abruptly changed course:

> [THE DEFENDANT:] Your Honor?
>
> THE COURT: Yes.
>
> . . .
>
> THE DEFENDANT: I would like to plead not guilty to both of the
> charges and proceed to trial --
>
> THE COURT: Okay
>
> THE DEFENDANT:  -- in both cases.
>
> THE COURT:  Okay.  That is your right.
>
> MR. GREGORY: Can I have one moment, Your Honor?
>
> THE COURT: Sure.

6

> Why don't we all step out of the courtroom and give you an opportunity to consult with your client. If the parties decide to proceed, I'm in chambers and can be reached. If not, can I just establish, for the record, that there's no issue with venue and we'll proceed with trial on the 19th of September?
>
> MR. GREGORY: Okay. I'm just going to speak to his mother.
>
> THE COURT: Okay. If the marshals will allow his mother to be at the [t]able, if counsel wants her to be there, that's up to the parties, but she can certainly remain in the room when we exit the room.

(Tr. 13:6 –14:3.) The Court then took a recess.[2] (Tr. 14:6.)

When the hearing resumed following the recess, the Court asked Defendant "how [he] would [] like to proceed." (Tr. 14:7–10.) Defendant stated that he "would like to plead guilty." (Tr. 14:11.) At Plaintiff's urging the Court began from where it left off prior to the recess. (Tr. 14:16–19.) The Court detailed again what the Government would be required to prove at a trial on the access device fraud element and then explained that Defendant had "a constitutional right to be charged by an indictment returned by a grand jury" but could "waive that right and consent

---

[2]  In an affirmation submitted in support of Defendant's motion to withdraw his guilty plea, Linda Wilburn, Defendant's mother, claims that "during the recess, Mr. Gregory and Mr. Taylor stated in sum and substance that a guilty plea was 'smart' merely due to the possible sentencing leniency that was supposedly only possible if [Defendant] did not 'waste the Court's time' and 'accept[ed] responsibility.'" (Wilburn Affirmation ¶ 6, Docket Entry No. 181.) Ms. Wilburn claims that she "briefly experienced the captious, coercive, and manipulative behavior of Mr. Gregory and Mr. Taylor," and that Defendant "stated to counsel in sum and substance that he 'should just go along with the plea colloquy' just for the purpose of possible sentencing leniency" — a statement which "neither Mr. Gregory nor Mr. Taylor suggested . . . was improper." (*Id.* ¶ 7.) Ms. Wilburn also claims that she saw the AUSA hand counsel a paper with instructions on what Mr. Wilburn would say during the plea colloquy. (*Id.* ¶ 8.)
Mr. Gregory and Mr. Taylor respond that they simply advised Mr. Wilburn that he had a chance of receiving a shorter sentence if he accepted responsibility but dispute that Mr. Wilburn told them he would "just go along with the plea colloquy" to obtain leniency. (Taylor Affirmation ¶¶ 9–10, Docket Entry No. 226; Gregory Affirmation ¶¶ 7–8, Docket Entry No. 225.) They also explain that the Government did not hand over instructions on what Mr. Wilburn would state during the plea colloquy, but instead handed over the new version of the superseding information. (Taylor Affirmation ¶ 9; Gregory Affirmation ¶¶ 8–9.) The Government likewise maintains that the AUSA did not hand over instructions on what Mr. Wilburn would state during the plea colloquy. (Gov't Opp'n 25 n.12.)

to being charged by information of the United States Attorney." (Tr. 14:20–15:16.) Defendant stated that he understood his right to a grand jury indictment and was willing to waive that right. (Tr. 16:7–12.) Defendant also stated that he discussed that decision with his attorneys, (Tr. 16:13–15), had not been threatened or otherwise induced to waive that right, (Tr. 16:18–21), and was waiving the right of his own free will, (Tr. 16:22–24). Defendant then signed the waiver of indictment, and the Court accepted the waiver, finding that it was "knowing[ly] and voluntarily made." (Tr. 17:3–10.)

The Court then asked Defendant if he "had sufficient time to discuss with [his] attorneys whether or not to plead to these two separate charges." (Tr. 17:13–15.) Defendant responded affirmatively, and the Court asked Defendant if he was "fully satisfied with the representation, counsel, and advice given to you in this case by your attorney." (Tr. 17:16–19.) Defendant responded that he "believe[d] so" before stating "Yes, Your Honor." (Tr. 17:20–22.) Turning back to Mr. Gregory, the Court asked counsel if he discussed the guilty plea with Defendant, (Tr. 18:1–2), if Defendant "underst[ood] the rights he would be waiving by pleading guilty," (Tr. 18:4–5), and if Defendant was "capable of understanding the nature of these proceedings, (Tr. 18:7–8). Mr. Gregory answered "Yes" to all questions, (Tr. 18:3, 6, 9), and later stated that he advised Defendant of the maximum and minimum sentence and fine that could be imposed, (Tr. 18:13–15), discussed the effects of the sentencing guidelines with Defendant, (Tr. 18:16 –18), and had no doubts as to Defendant's competence to plead guilty to the offences, (Tr. 18:10 –12).

The Court next discussed with Defendant "certain rights to trial" that he would "be giving up by pleading guilty." (Tr. 18:19–21.) The Court informed Defendant that he had a right "to plead not guilty," (Tr. 18:22–23), "to a speedy and public trial by jury," (Tr. 19:1–3), to have the Government "prove you guilty beyond a reasonable doubt," (Tr. 19:6 –9), "to the assistance of

counsel for your defense," (Tr. 19:12–13), "to see and hear all witnesses and to have them cross-examined in your defense," (Tr. 18–19), "not to testify unless you voluntarily elected to do so in your own defense," (Tr. 19:22–24), "to compel the attendance of witnesses to testify in your defense," (Tr. 20:2–3), and the right to decline to testify or "put on any evidence at trial" without those choices being "used against you," (Tr. 20:6–8). Defendant responded that he understood each right he was forfeiting. (Tr. 18:24–25; 19:4–5, 10–11, 16–17, 20–21; 19:25–20:1; 20:4–5, 9–10), and also understood that if the Court were to accept his guilty plea, "there will be no trial, and [he] would have waived and given up [his] right to trial," (Tr. 20:11–17). Defendant also indicated that he understood that there will be "no right of appeal from the judgment of guilt," (Tr. 20:18–23), and that his guilty plea would require the Court to ask questions which, by answering, will require him to "giv[e] up [his] right not to incriminate [himself]," (Tr. 20:24–21:6). The Court then confirmed with Defendant that he had signed a plea agreement, had "sufficient time to review it with [his] attorneys" prior to signing, and understood the agreement. (Tr. 21:13–22:4.) Defendant also confirmed that the agreement "represented [his] entire understanding with the Government." (Tr. 22:12–14.)

Defendant then asked the Court if it would "choose [its] own guidelines range at sentencing." (Tr. 22:19–22.) The Court explained that [t]he guidelines are advisory" and that it has "some discretion to determine what is an appropriate sentence by looking not only at the guidelines but also at a number of sentencing factors." (Tr. 22:17–23:15.) The Court later explained that for "the sole count of the superseding information, [Defendant] face[d] a maximum term of imprisonment of life and a mandatory minimum term of imprisonment of ten years," (Tr. 24:12–14), a maximum term of supervised release for life and a minimum supervised release term of five years," (Tr. 24:17–20), a monetary fine of $250,000, (Tr. 25:6–7),

registration as a sex offender, (Tr. 26:4–7), criminal forfeiture, (Tr. 26:10–11), and "restitution in the full amount of each victim's losses," (Tr. 27:5–13).  The Court also explained that for the device access fraud charge, Defendant "face[d] a maximum term of imprisonment of 15 years," (Tr. 28:3 –5), "a maximum supervised release term of three years," (Tr. 28:8 –10), "a maximum fine of $250,000," (Tr. 28:19 –20), "a special assessment of $100," (Tr. 28:20–21), and "restitution . . . in the amount of victim's losses," (Tr. 29:16 –30:1), and that the sentences imposed "could be made to run consecutively," (Tr. 28:24–29:1).  In a series of responses, Defendant indicated that he understood the potential penalties.  (Tr. 24:15–16, 21–22; 25:4–5, 8– 9; 26:8–9, 12–13; 27:11–15; 27:25–28:1; 28:6–7, 11–12, 22–23; 29:2–3, 30:2–3.)  Defendant also confirmed that he had not been threatened into accepting the plea agreement, (Tr. 23:22– 24), and was pleading guilty voluntarily and of his own free will, (Tr. 23:25–24:2).

The Government then estimated that Defendant's guidelines sentencing range would be 324 months to 405 months.  (Tr. 30:11–31:4.)  The Court explained to Defendant that "this is an estimate" which "could be wrong," and stated that it would "not be able to determine what the advisory guideline range for your case will be until after the Probation Department has prepared [a] Presentence Report and you and the Government have had an opportunity to review it and to object either to the guidelines calculation or to any facts that are in the PSR."  (Tr. 31:13–19.)  Defendant stated that he understood.  (Tr. 31:24–25.)  In a series of responses, Defendant also indicated that he understood that the Court's sentence may differ from an estimate provided by his attorneys, (Tr. 31:22–25), and there was no guarantee of a particular sentencing guideline range or sentence, (Tr. 32:10–17).  In addition, Defendant stated that he understood that he could not withdraw his guilty plea if the Court's sentence was different from his expectations, (Tr. 32:18–23), and that he was waiving his right to appeal his sentence if he was sentenced to a term

of imprisonment of 405 months or less, (Tr. 33:4 –12).

Defendant responded "No" when asked by the Court if he had any questions about the rights he was giving up, the punishment he was facing, the plea agreement, "the nature of the charges, or anything else in this matter."  (Tr. 33:13–17.)  Defendant then proceeded to plead guilty.

> THE COURT:  Mr. Wilburn, what is your plea to the sole count of the superseding information; guilty or not guilty?
>
> THE DEFENDANT:  Guilty, Your Honor.
>
> THE COURT:  And what is your plea to Count Two of the CR-139 indictment charging you with access device fraud; guilty or not guilty?
>
> THE DEFENDANT:  Guilty, Your Honor.
>
> THE COURT:  Are you making your plea of guilty voluntarily and of your own free will?
>
> THE DEFENDANT:  Yes.
>
> THE COURT: Has anyone threatened or forced you to plead guilty?
>
> THE DEFENDANT:  No.
>
> THE COURT:  Other than the agreement with the Government, has anyone made any promises that caused you to plead guilty?
>
> THE DEFENDANT:  No.
>
> THE COURT: Has anyone made any promise to you as to what your sentence will be?
>
> THE DEFENDANT:  No.
>
> (Tr. 33:23–34:18.)

### c.   Post-Plea Hearing Motions

In a letter dated September 6, 2022, Defendant moved himself to relieve Mr. Taylor as co-counsel, stating that "Mr. Taylor's services are no longer required."  (Letter dated Sept. 6,

2022, Docket Entry No. 164.)  The Court denied Defendant's request on September 17, 2022, explaining that it "decline[d] to exercise its discretion to permit hybrid representation and denie[d] [the motion] without prejudice to later representation through counsel."  (Order dated Sept. 17, 2022.)  On September 18, 2022, Mr. Gregory, by letter, informed the Court that he objected to Defendant's request to relieve Mr. Taylor as defense counsel.  (Gregory Letter, Docket Entry No. 166.)  In a letter dated September 23, 2022, Defendant renewed his request to relieve Mr. Taylor as co-counsel.  (Def.'s Letter, Docket Entry No. 169.)  On September 30, 2022, Mr. Gregory requested "a Curcio hearing to determine whether [Defendant's] counsel is conflicted," noting that Defendant had alleged that he and Mr. Taylor had "coerced [Defendant] into pleading guilty."  (Gregory Letter, Docket Entry No. 171.)

In a letter dated October 5, 2022, Defendant moved to withdraw his guilty plea and waiver of indictment, and also moved to request a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  (Def.'s Mot. to Withdraw.)  In a handwritten letter dated October 21, 2022, Defendant moved to dismiss the Superseding Information filed on August 15, 2022.[3]  (Def.'s Mot. to Dismiss.)

On November 4, 2022, the Court held a Curcio hearing, relieved Mr. Gregory and Mr. Taylor, and appointed Mark DeMarco as counsel for Defendant.  (Min. Entry dated November 3, 2022.)  On January 11, 2023, the Court granted Defendant's request to proceed pro se and appointed Mr. DeMarco as standby counsel.  (Min. Entry dated Jan. 11, 2023.)

---

[3]  In three handwritten letters dated November 14, 2022, December 11, 2022, and January 22, 2023, and two typed letters dated January 2, 2023 and February 21, 2023, Defendant supplemented his motion to dismiss the August 15, 2022 Superseding Information and moved to dismiss the Superseding Indictment filed on August April 22, 2019.  (Def.'s Am. Mot. to Dismiss; Def.'s Second Am. Mot. to Dismiss; Def.'s Third Am. Mot. to Dismiss; Def.'s Fourth Am. Mot. to Dismiss; Def.'s Fifth Am. Mot. to Dismiss.)

On April 14, 2023, the Court instructed Mr. Gregory and Mr. Taylor to file affidavits in response to Defendant's allegations underpinning his various motions, specifically that Mr. Gregory and Mr. Taylor denied him effective assistance of counsel and coerced him to accept the plea.  (Order dated Apr. 14, 2023.)  Mr. Gregory and Mr. Taylor filed affidavits flatly denying those allegations on April 27, 2023.  (Aff. of Samuel Gregory, Docket Entry No. 225; Aff. of Zachary Taylor, Docket Entry No. 226.)  On June 29, 2023, the Court directed Mr. Wilburn to inform the Court as to whether he sought an evidentiary hearing regarding his motion to withdraw his plea.  (Minute Entry dated June 29, 2023.)  Mr. Wilburn indicated that he objected to an evidentiary hearing to confront prior counsel and argued that such a hearing was not necessary to decide the disputed issues.  (Letter dated July 2, 2023, Docket Entry No. 250.)

## II.   Parties' Arguments

### a.   Withdrawal of Guilty Plea

Defendant argues that he should be permitted to withdraw his guilty plea because his representation by Mr. Gregory and Mr. Taylor — his defense counsel at the time of his guilty plea — was constitutionally defective.  (Def.'s Mot. to Withdraw 1.)  Defendant argues that his "guilty plea was not voluntarily or intelligently made," (*id.*), because Mr. Gregory "fail[ed] to raise a defense theory and inadequately investigat[ed] . . . [D]efendant's cases prior to recommending and ultimately coercing . . . [D]efendant to plead guilty," (*id.* at 2).  Defendant claims that he frequently made requests to Mr. Gregory to review discovery, but was never "presented with any meaningful discovery," and was further prevented from viewing discovery due to his "anxiety, fear of being attacked because of his charges, and Mr. Gregory's failure to counsel the defendant to alleviate his fears."  (*Id.* at 3.)  Defendant alleges that Mr. Gregory "and the prosecutor secretly arranged for [him] to view discovery," but that Mr. Gregory "failed to

13

adequately reassure the defendant of the legitimacy of this discovery viewing," leading to Defendant not viewing the discovery material. (*Id.* at 5.)

Defendant now claims that, during jailhouse visits, "Mr. Gregory and Mr. Taylor coached [him] to give false answers that fit the government's theory of the case." (*Id.* at 6.) Defendant also claims that Mr. Gregory and Mr. Taylor failed to appraise him of the sentencing consequences of pleading guilty by misleading him as to the sentence the Court would likely impose. (*Id.* at 8.) According to Defendant, during the change of plea hearing recess, he "asked if he 'should just go along with the plea colloquy,'" and "told both Mr. Gregory and Zachary Taylor that he was going to lie under oath." (*Id.* at 5.) In addition, Defendant claims that Mr. Gregory and Mr. Taylor "participated" and "assisted [him] in advancing and perpetrating the fraud on the tribunal" by encouraging him to plead guilty to earn sentencing leniency with the Court. (*Id.*)

In support of his motion, Defendant argues that (1) the reason for the time between the guilty plea and the motion to withdraw is that counsel failed to assist with the plea withdrawal motion, (2) he "has continuously asserted and maintained his innocence . . . on the record, in private conversations with counsel, and in numerous emails with counsel," and (3) the Government would not be prejudiced by the withdrawal of his guilty plea because trial was already scheduled to take place nearly four years after his arrest, which "has irreparably prejudiced the defendant, not the government." (*Id.* at 8.)

The Government urges the Court to "reject the defendant's attempt to upend the finality of his conviction." (Gov't Opp'n 21.) The Government argues that Defendant's claim that he lied under oath is not credible given Defendant's history of accusing his defense attorneys of coercing his guilty pleas. (*Id.* at 22 –23.) The Government also argues that Defendant's

argument that his second guilty plea is involuntary is belied by his active participation in the plea colloquy with the Court and his repeated requests for clarification which demonstrated that he "was quite carefully considering the effects of pleading guilty." (*Id.* at 24.)

In addition, the Government contends that "[D]efendant has not offered any evidence that he is factually innocent," (*id.* at 25), the timing of Defendant's motion "is pure gamesmanship," (*id.* at 27), and "the government, victims and the judicial system, face substantial prejudice in resurrecting a prosecution months after the defendant's second guilty plea," (*id.* at 29).

### i.   Standard of Review

"A defendant does not have an absolute right to withdraw a guilty plea, and whether to permit withdrawal 'is committed to the sound discretion of the district court.'" *United States v. Kalichenko*, 840 F. App'x 644, 646 (2d Cir. 2021) (quoting *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011)). Rule 11(d) permits the withdrawal of a guilty plea prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." *United States v. Freeman*, 17 F.4th 255, 262 (2d Cir. 2021) (quoting Fed. R. Civ. P. 11(d)). "In general, to determine whether the defendant has shown a 'fair and just reason' to justify withdrawal, a district court considers, *inter alia*: (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *United States v. Bright*, No. 21-2453, 2023 WL 2469767, at *2 (2d Cir. Mar. 13, 2023) (quoting *United States v. Schmidt*, 373 F.3d 100, 102–03 (2d Cir. 2004)). "However, the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

"One factor considered in reviewing such a claim is the voluntariness of the plea." *United States v. Okparaeke*, No. 21-1933, 2023 WL 2604351, at *1 (2d Cir. Mar. 23, 2023); *see also United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (explaining that where a defendant claims a plea is involuntary, the focus must be on voluntariness and that an involuntary plea is void, even if the other factors weigh against withdrawal).  "[I]f a defendant enters into a plea agreement on the basis of deficient legal advice, the agreement may not be 'knowing and voluntary.'" *DiBiase v. United States*, No. 20-2475, 2023 WL 2376223, at *3 (2d Cir. Mar. 7, 2023) (quoting *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008)).  However, "[t]he fact that a defendant ha[d] a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Davila*, 852 F. App'x 35, 37 (2d Cir. 2021) (quoting *Doe*, 537 F.3d at 212)).

In addition, "a defendant's sworn testimony at a plea colloquy is accorded a 'strong presumption of accuracy.'" *United States v. Bical*, 819 F. App'x 26, 28 (2d Cir. 2020) (quoting *United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016)).  Accordingly, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Lesane*, No. 21-CR-2057, 2023 WL 1812878, at *2 (2d Cir. Feb. 8, 2023) (quoting *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)); *United States v. Wolf*, 699 F. App'x 62, 63 (2d Cir. 2017) (citation omitted) (explaining that no evidentiary hearing is necessary where the allegations "merely contradict the record" or are "inherently incredible").

ii.   **Analysis and Decision**

For the second time in the somewhat tortured history of these cases, the Defendant Wilburn moves to withdraw his guilty pleas, claiming that his pleas were not knowing and voluntary and accusing his counsel of ineffective assistance and indeed seriously unprofessional conduct. Now choosing to proceed pro se having exhausted a roster of experienced and talented CJA counsel via unsubstantiated accusations of one sort or another, he continues to pepper the Court with ill-considered applications, complaints, and objections that merit little if any response from the Court. Discharged counsel each submitted responsive affidavits and the Government opposes in a persuasive Memorandum in Opposition. Mr. Wilburn has declined the Court's invitation for an evidentiary hearing.

When a defendant charged with serious offenses and facing very significant punishment seeks to withdraw a guilty plea and proceed to trial, I have rarely, if ever, denied him that opportunity regardless of the wisdom of the accused's apparent preference. I did grant Mr. Wilburn's similar request to withdraw his earlier plea in the case No. 19-CR-139, since the plea had not yet been formally accepted by the District Court. However, Mr. Wilburn's second attempt to withdraw his pleas is simply not credible.

Certainly, the transcript of the plea proceeding before Chief Judge Brodie does little to support his position. Early during the plea proceeding, Mr. Wilburn did, in an isolated response, tell the Court that he wished to proceed to trial. Judge Brodie immediately suspended the proceedings and before leaving the bench confirmed the scheduled trial date should the defendant persist in his stated desire to proceed to trial. Counsel, the defendant and his mother conferred, and the proceedings resumed with the following exchange between Judge Brodie and Mr. Wilburn:

[THE COURT:]  Mr. Wilburn, how would you like to proceed?

THE DEFENDANT: I would like to plead guilty.

THE COURT:  Okay.  To the two charges that we've been discussing?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  So I'm going to continue where I left off before the break, unless you would like me to start all over.

THE DEFENDANT:  No.  I would like you to continue from where we left off.

(Tr. 14:10–19.)

Throughout the balance of the lengthy proceeding, there was not a single instance of equivocation, unresponsiveness or misunderstanding.  Mr. Wilburn's responses were entirely appropriate and leave no doubt that he entered his pleas fully aware of his rights and the potential consequences of his detailed admissions, as Judge Brodie later found in accepting his pleas.  His unadorned claim of innocence flies in the face of his sworn, specific admissions during a meticulous plea proceeding as well as the Government's notable evidence proffer provided to Judge Brodie and summarized in its Memorandum.

To bolster his claim that his plea was coerced by counsel, he tenders several emails from his attorneys strongly encouraging that he plead guilty.  For example, counsel advised Mr. Wilburn that "[y]ou have no defense and no strategy," and that going to trial would be a "suicide mission," and that "[t]hat simply to claim innocence and attack me is not an effective strategy." Mr. Wilburn simply opines that these and other similar assessments of counsel rendered his counsel ineffective and the plea involuntary.  The argument does not succeed.  Quite the contrary.  Sometimes effective assistance requires just the sort of enthusiasm and persistence that Mr. Wilburn now complains is constitutionally defective.  But Mr. Wilburn does not stop there.

He alleges that his attorneys, officers of the court, agreed to stand mute and allow him to lie under oath and admit to serious crimes for which he now claims innocence.

Mr. Wilburn's claims are simply not credible. His incessant finger pointing, and conclusory charges do not impress me. No one suggests that pleading guilty to serious crimes with an estimated guidelines range between 324 through 405 months and a mandatory minimum sentence of ten years is an easy decision under any circumstances, but the information before me, to the extent that I can credit it, leaves little doubt that Mr. Wilburn knew what he was doing and acted of his own accord. The defendant is no shrinking violet. He has had plenty to say. To his credit, he has actively participated in the defense of this case, and having invoked his right to represent himself, wisely or not, he presses any number of applications to the Court.

And finally, as the government observes, there is real value to bringing this matter to closure, for Mr. Wilburn, the Government and for those significantly impacted by his admitted criminal behavior.

Defendant has not demonstrated that his decisions to plead guilty and waive his right to an indictment were made unknowingly or involuntarily. Defendant primarily claims that his defense counsel failed to properly investigate his case and appraise him of the consequences of pleading guilty. (*See generally* Def.'s Mot. to Withdraw.) However, Defendant's allegations in his various motions directly conflict, not only with the statements he provided to the Court during his plea allocution, but also with the affidavits of both his former counsel.

Defendant's attempt now to contradict his statements made under oath, and the affidavits of former counsel, is unavailing, as the Court provided ample opportunity for Defendant to indicate objections to the plea agreement and any untoward influence on his decisions. *See Kalichenko*, 840 F. App'x at 646 (rejecting attempt to withdraw guilty plea on involuntariness

19

grounds where "the district court engaged in a thorough and extensive colloquy prior to accepting [the defendant's] guilty plea, during which she stated that she felt guilty and described the facts supporting her conviction").  During the change of plea hearing, Defendant repeatedly acknowledged and asserted his understanding of the plea agreement, and all consequences stemming from his acceptance of the agreement — statements which he attempts to cast aside now.  *See Davila*, 852 F. App'x at 37 (rejecting withdrawal of guilty plea on involuntariness grounds where the defendant "repeatedly stated under oath during his plea colloquy that he knew and understood the contents of his plea agreement, that he wished to plead guilty, and that his decision was voluntary").

In this limited instance, justice and fairness requires that I deny relief.  Mr. Wilburn's motion to withdraw his pleas is in all respects denied.  The matter is scheduled for sentencing on October 16, 2023 at 10:00 AM before the undersigned.

**b.    Dismissal of charging instruments**

Despite Mr. Wilburn's knowing and voluntary plea, the Court briefly addresses the pending motions to dismiss the charges.

Defendant argues that the Court should dismiss the April 22, 2019 Superseding Indictment and the August 15, 2022 Superseding Information because "the [G]overnment deliberately failed to make the aggravating discovery material in this case reasonably [available] for almost [four] years."  (Def.'s Third Am. Mot. to Dismiss 1.)  Defendant contends that not making the child pornography materials at issue in his case available during the discovery phase of his proceedings "has been fundamentally unfair" and violates his right to equal protection of the law.  (*Id.*)  Defendant claims that he was not provided an "ample opportunity" to review the evidence due to the constraints placed upon his ability to view the child pornography materials.

(*Id.* at 2 (citing 18 U.S.C. § 3509(m)(2)(B)).)  Defendant argues that "[t]he deliberate

withholding of evidence, from both appointed counsel and the [G]overnment, has 'worked to

[his] actual and substantial disadvantage,' militating dismissal with prejudice."  (Def.'s Fifth

Am. Mot. to Dismiss 3 (quoting *Shinn v. Ramirez*, 142 S. Ct. 1718, 1733 (2022)).)

     Defendant also argues that the Court should dismiss the August 15, 2022 Superseding

Information "because the attestor, Carolyn Pokorny, was unable to faithfully execute her duties

as required by Article VI, Clause 3 of the U.S. Constitution and Title 28 Section 544 of the U.S.

Code, due to her invalid Oath of Office and Appointment Affidavit."  (Def.'s Mot. to Dismiss 1.)

Defendant claims that Ms. Pokorny "is not a duly appointed attorney for the government," (*id.* at

2), because her oath of office was invalid, (*id.* at 1).  According to the Defendant, Ms. Pokorny's

"failing to be a properly appointed prosecutor with an invalid oath has distorted the integrity of

the judicial process."  (Def.'s Am. Mot. to Dismiss 1–2.)  Defendant also claims that the United

States Attorney's Office for the Eastern District of New York routinely violates the law to

convict alleged criminals.  (Def.'s Mot. to Dismiss 2.)  In addition, Defendant argues that the

Superseding Information should be dismissed "because it fails to alert the defendant of the

possibility of any sentencing enhancements."  (Def.'s Fourth Am. Mot. to Dismiss 1 (citing

*United States v. Campo*, 890 F.2d 1363, 1363 (7th Cir. 1989)).)

     The Government argues that Defendant waived any objections to the Government's

charging instruments by entering into the plea agreement.  (Gov't Opp'n 31.)  The Government

also argues that Defendant's motions to dismiss the Superseding Information are without merit

because Ms. Pokorny, as the First Assistant United States Attorney for the Eastern District of

New York, was authorized to sign the Superseding Indictment, (*id.* at 31–32), and the record

establishes that Defendant was fully aware of the charge contained in the Superseding

Information.  The Government contends that Defendant's attempt to dismiss the Superseding Indictment similarly lacks merit because Defendant was provided multiple opportunities to review the child pornography materials at issue in this case and refused to do so by his own decision, (*id.* at 32–33).

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea" unless they "show that the plea agreement was not knowing and voluntary."  *Parisi*, 529 F.3d at 138 (first citing *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996); then citing *United States v. Da Cai Chen*, 127 F.3d 286, 289–90 (2d Cir. 1997)).

Accordingly, the Court denies Defendant's motions to dismiss the Superseding Indictment and Superseding Information.

### III.  Conclusion

The motions are in all respects denied.

Dated: August 28, 2023
    Brooklyn, New York

SO ORDERED:

_____s/ RJD_____
RAYMOND J. DEARIE
United States District Judge

22